IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| RICHARD A. WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security,[1] ) <br> ) <br> Defendant. ) <br> ) | Case No. 11-4343-CV-C-DPR |

## MEMORANDUM AND ORDER

An Administrative Law Judge (ALJ) denied Social Security Disability Insurance Benefits and Supplemental Security Income to Plaintiff Richard A. Williams in a decision dated January 12, 2011 (Tr. 42-55). The Appeals Counsel denied review (Tr. 1-6). Thus, the ALJ's decision became the Commissioner of Social Security's final decision denying Social Security Disability benefits. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481. On appeal to this Court, Claimant Williams argues that the ALJ erred by not properly evaluating the opinion of the consulting psychologist in determining the Claimant's Residual Functional Capacity. For the reasons set forth below, the decision of the Commissioner of Social Security is **AFFIRMED**.

### FACTUAL BACKGROUND

Claimant Williams sought disability benefits alleging bipolar disorder, back injuries, hepatitis C, blackouts, emphysema, and dyslexia (Tr. 199). Williams alleged his onset of

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is **SUBSTITUTED** for Michael J. Astrue as the Defendant in this suit.

disability date as July 1, 2008 (Tr. 137). He claimed past work as a cashier, dishwasher, general laborer, maintenance worker, and truck unloader (Tr. 200).

*Mental Health and Psychological History*

Williams saw Bhaskar Y. Gowda, M.D., a psychiatrist, for a follow-up exam on June 6, 2007.[2] Williams denied mood fluctuations or medication side effects and reported better energy and concentration at work. Dr. Gowda noted his thoughts were "logical and goal directed," and his memory, insight, and judgment were good. Dr. Gowda diagnosed Bipolar I Disorder, most recent episode Mixed with Psychotic Features. He prescribed several psychotropic medications (Tr. 309). Williams saw Dr. Gowda again on August 1 and October 11, 2007, and January 31 and April 17, 2008 (Tr. 304-308). Dr. Gowda made similar notes at each appointment, noting Williams's improved mood, energy, and concentration at work. On May 23, 2008, after Williams complained of sleepiness, Dr. Gowda made alterations in his medication regimen (Tr. 304).

Williams attempted suicide by overdose of a prescription drug on July 18, 2008. Although he remained stable, he stated in the emergency room that he wished to die, showing no remorse. He was admitted to the hospital for observation, but was released the next day. He was diagnosed with Major Depressive Disorder, recurrent, and Bipolar Disorder. He was assigned a Global Assessment of Functioning (GAF) of 35, indicating severe symptoms. His medications were changed (Tr. 332-40).

Records show that Williams engaged in counseling regularly between June and October 2010 at Pathways Community Behavioral Health in Eldon, Missouri, for his depression and

---

[2] Notes predating this appointment do not appear in the record.

anxiety. Counselor Julie Mitchell, MA, worked with him to manage his moods and utilize coping skills to deal with the stressors in his life (Tr. 495-97, 500-02, 505-06).

On July 6, 2010, Williams saw Collyer Ekholm, M.D. Williams reported that his symptoms of depression had worsened over the last month. He reported no episodes of mania. Dr. Ekholm diagnosed Bipolar Mood Disorder, Last Episode of Depression, Severe, and a GAF of 55, indicating moderate symptoms (Tr. 498-99). Williams saw Dr. Ekholm again on August 17, 2010. He reported no symptoms of depression. Dr. Ekholm assessed a GAF of 60, again indicating moderate symptoms (Tr. 503-04).

*Medical Opinions*

Paul Stuve, Ph.D., evaluated Williams's medical records on behalf of the agency on June 18, 2008. He opined that Williams suffered from an Affective Disorder, specifically Bipolar Disorder with irritability and mood swings (Tr. 310-17). Dr. Stuve determined, however, that Williams experienced no limitations in the activities of daily living; in maintaining social functioning; in maintaining concentration, persistence, or pace; and no episodes of decompensation (Tr. 318-19). Based upon his reading of the records, Dr. Stuve found that Williams's mental impairment was not severe (Tr. 320).

Thomas J. Spencer, Psy.D., performed a consulting psychological evaluation on July 28, 2009. Regarding his psychological symptoms, Williams alleged he had been diagnosed with bipolar disorder four years prior. He described racing thoughts, anxiety, irritability, euphoria, and hearing voices during his last episode of mania, then described "crashing" into depression and wanting to sleep for days. He denied feelings of helplessness or hopelessness and stated he was feeling "pretty level." He reported that he still experiences highs and lows, but the episodes are shorter and less extreme with medication. He reported that he continued to have problems

3
Case 2:11-cv-04343-DPR   Document 25   Filed 03/28/13   Page 3 of 8

with concentration, memory, and anxiety. Regarding mental status, Dr. Spencer noted that Williams had intact insight and judgment, but a bland, flat affect. Williams was alert and oriented; he exhibited no delusional beliefs. Dr. Spencer concluded that Williams met the diagnostic criteria for Bipolar Disorder. He determined a GAF of 50-55, indicating moderate symptoms. Dr. Spencer opined that Williams retained the ability to understand and remember simple to moderately complex instructions, the ability to engage in and persist with simple to moderately complex tasks, but was moderately impaired in his ability to interact socially and adapt to change in the workplace (Tr. 366-69).

*ALJ Hearing*

Williams appeared in person with counsel at a hearing before the ALJ on December 1, 2010. Regarding his bipolar disorder, Williams testified that he has "bad days" once or twice a week, during which he experiences crying spells and avoids others, including his family, has difficulty concentrating, and occasionally experiences suicidal thoughts. He testified that he likes to draw in his free time, and he helps his wife with housework (Tr. 60-84).

*ALJ Opinion*

The ALJ rendered a decision denying benefits on January 12, 2011 (Tr. 42-55). The ALJ found Williams suffered from the following severe impairments: bipolar I disorder, most recent episode mixed, with psychotic features; mild degenerative disc disease; and chronic obstructive pulmonary disease. The ALJ found, however that none of the claimant's impairments met or medically equal a listing. Regarding his mental impairment, the ALJ found that Williams had only mild restrictions in the activities of daily living; moderate difficulties with social functioning; mild difficulties with concentration, persistence, or pace; and only two previous episodes of decompensation. The ALJ thoroughly discussed the report of Dr. Spencer, the

4

consulting psychologist, and noted Dr. Spencer's opinion that the claimant could understand and remember simple and moderately complex instructions; could engage and persist with simple to moderately complex tasks; but was moderately limited in his social functioning (Tr. 47). The ALJ found that Williams had the Residual Functional Capacity (RFC) to perform medium work, except that he must avoid concentrated exposure to fumes, dust, chemicals, and extreme temperatures. The ALJ found him moderately limited in carrying out detailed instructions and markedly limited in his ability to interact appropriately with the public. The ALJ found that the claimant's subjective statements of his symptoms were not credible. The ALJ explained that he gave little weight to the opinion of the non-examining agency psychologist rendered in June 2008 because the claimant's mental status and alleged onset of disability date changed after that evaluation. Based on the RFC, the ALJ found that Williams was capable of performing his past relevant work as a production line assembler because that job did not require the performance of work-related activities precluded by the RFC. The ALJ further found that Williams was capable of performing other jobs existing in the national economy, such as ticket taker; merchandise marker; labeler/marker; table worker; film touchup inspector; and press clipper, cutter, and paster (Tr. 54)

## LEGAL STANDARDS

To receive disability benefits, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must consider in sequence: (1) whether the claimant is currently employed and doing substantial gainful activity, (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments, (3) whether the impairment meets or equals one listed by the Commissioner and whether it meets the duration requirement, (4) whether the claimant has the residual functional capacity to return to doing his or her past work, and (5) whether the claimant is capable of making an adjustment to some other type of work available in the national economy. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005). If the claimant does not have a listed impairment, but cannot perform his or her past work, then the burden shifts to the Commissioner at step five to show that the claimant can perform some other job that exists in the national economy. *Id*.

Judicial review of a denial of disability benefits is limited to whether there is substantial evidence on the record as a whole to support the Social Security Administration's decision. 42 U.S.C. § 405(g); *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence on the record as a whole," however, requires a more exacting analysis, which also takes into account "whatever in the record fairly detracts from its weight." *Minor*, 574 F.3d at 627 (quoting *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989)). Thus, where it is possible to draw two inconsistent conclusions from the evidence, and one conclusion represents the ALJ's findings, a court must affirm the decision. *See Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d

1183, 1184 (8th Cir. 1989)). In other words, a court should not disturb an ALJ's denial of benefits if the decision "falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). A decision may fall within the "zone of choice" even where the court "might have reached a different conclusion had [the court] been the initial finder of fact." *Id.* (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

*Medical Opinions*

In determining whether a claimant is disabled, the ALJ considers medical opinions provided "together with the rest of the relevant evidence" in the record. 20 C.F.R. § 404.1527(b). An ALJ is directed to evaluate the opinion of a consulting physician based upon the evidence in the record and upon the source's area of specialty or expertise in the listings. 20 C.F.R. § 404.1527(e)(2)(ii). Regardless of the source of the opinion, the ALJ must explain and give good reasons for the weight accorded to the various opinions. 20 C.F.R. § 404.1527(e)(2)(ii). Discussion of the weight given to a medical opinion is required only when the opinions are inconsistent with each other. Where there is no inconsistency, "the ALJ need not weigh them." *Hepp v. Astrue*, 511 F.3d 798, 806-07 (8th Cir. 2007). Furthermore, "[a]n arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome." *Hepp*, 511 F.3d at 806 (quoting *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir 1992) (other citations omitted)).

Williams argues that the ALJ's failure to specify the weight given to Dr. Spencer's opinion requires reversal. Based on the evidence in the record, the Court finds that substantial evidence on the record as a whole supports the ALJ's RFC determination. Williams is correct in pointing out that the ALJ did not specifically state she gave controlling weight to the opinion of Dr. Spencer, the consulting psychologist. However, the evidence in the record demonstrates that

she fully considered his report, and in fact adopted his opinions regarding the claimant's ability to understand instructions, perform tasks, and interact with the public in determining the claimant's RFC.  In addition, because the ALJ completely discounted the opinion of Dr. Stuve, the agency reviewing physician, on the basis that significant psychological events occurred after the opinion was rendered, there were no other opinions in the record that contradicted Dr. Spencer's.  Thus, the ALJ was not required to describe the weight accorded to Dr. Spencer's opinion. *See Hepp*, 511 F.3d at 806.  To make her opinion abundantly clear, the ALJ could have placed the paragraphs discussing Dr. Spencer's recommendations in the portion of the opinion discussing the RFC, but such omission is insignificant when it does not alter the ALJ's final determination. *Id.*  The ALJ thoroughly discussed the medical, opinion, and subjective complaint evidence in her opinion.  She also discussed at length Dr. Spencer's opinion, and used his recommendations in determining the claimant's RFC.  In light of the ALJ's tacit incorporation of Dr. Spencer's opinion into her RFC calculation, the Court finds only harmless error in her failure to specifically state that she gave significant weight to Dr. Spencer's opinion.  As such, the Court will not reverse the decision of the ALJ, and finds that the ALJ's determination of Williams's RFC is based upon substantial evidence in the record as a whole.

## CONCLUSION

Based upon a thorough review of the record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole.  **IT IS THEREFORE ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS SO ORDERED.**

**DATED:  March 28, 2013**

          /s/ *David P. Rush*
          **DAVID P. RUSH**
          **United States Magistrate Judge**